[No. H028699. Sixth Dist. Apr. 18, 2006.]

MATRIXX INITIATIVES, INC., Plaintiff and Respondent, v.
JOHN DOE et al., Defendants;
BARBARY COAST CAPITAL MANAGEMENT et al., Appellants.

 

COUNSEL

Shartsis Friese, Erick C. Howard and Robert E. Schaberg for Appellants.

Snell & Wilmer, Richard A. Derevan, Marc L. Turman and Michael B. Reynolds for Plaintiff and Respondent.

OPINION

**ELIA, Acting P. J.**—Plaintiff Matrixx Initiatives, Inc. (Matrixx), sued a number of individuals for defamation and related claims after they posted statements critical of Matrixx on Internet message boards. Unable to identify two of the anonymous posters, Matrixx sought a discovery order compelling third parties Stephen L. Worthington and Barbary Coast Capital Management, LLC (Barbary Coast) to disclose the information. The superior court granted Matrixx's motion to compel answers to the deposition questions designed to discover the identity of the two posters.

Worthington and Barbary Coast appeal, contending that Matrixx failed to demonstrate a sufficient basis for disregarding the First Amendment right to speak anonymously on the Internet. Matrixx responds that it had a right to discovery of the anonymous defendants' identity, and it adds that appellants lacked standing to oppose the discovery order. We agree with Matrixx's second point and must therefore affirm the order on that ground.

*Procedural Background*

Matrixx is a pharmaceutical company that produces and sells over-the-counter pharmaceutical products, including several that are marketed through its subsidiary, Zicam, LLC. Matrixx is traded on the NASDAQ stock exchange under the symbol MTXX.

The present action arose in Maricopa County, Arizona, where Matrixx has its principal place of business. In its sixth amended complaint, Matrixx asserted causes of action for defamation, interference with contractual relations and "business expectancies," and trade libel against five named individuals and 25 "John Doe" defendants. Matrixx alleged that these defendants had published false and injurious statements on two Internet message boards accessible through the Yahoo! Finance and Silicon Investor Web sites (<http://finance.yahoo.com> [as of Apr. 18, 2006] and <http://www.siliconinvestor.com> [as of Apr. 18, 2006].) As a result of these false statements, Matrixx had suffered "unusual" fluctuations in its stock, such as "relatively large-volume selling near the close of the market."

Among the anonymous posters on the two message boards were those using the aliases "veritasconari" and "gunnallenlies." Veritasconari posted disparaging statements about Matrixx on the Yahoo! Finance message board between May and October 2003. In February 2004, Gunnallenlies began posting similar statements on the same message board. Matrixx served subpoenas on Yahoo! for information leading to the identification of the two posters, and Yahoo! complied. Both posters, however, had used identity-obfuscation software that enabled them to avoid being identified and subpoenaed.

Finally, on one occasion Gunnallenlies neglected to activate the screening service before posting on the Yahoo! Finance message board. Using the information provided by Yahoo!, Matrixx was able to trace Gunnallenlies to Barbary Coast, a hedge fund managed by Worthington. Worthington was deposed in San Francisco, but he refused to answer any questions about the identity of Veritasconari or Gunnallenlies, including whether he himself was Veritasconari or Gunnallenlies. He did admit knowing one of the named defendants in the case, Floyd Schneider, as both had once been defendants in an unrelated California lawsuit.[1] He also admitted being a paying subscriber to the Eyeshade Report, to which Veritasconari had referred for support in denigrating Matrixx.[2]

On February 11, 2005, Matrixx moved in Santa Clara County to compel Worthington's deposition answers. In opposition, appellants contended that the motion could not withstand the heightened scrutiny necessary to overcome the posters' First Amendment right to speak anonymously on the Internet. Appellants specifically argued that (1) the complaint was fatally deficient by failing to name Veritasconari and Gunnallenlies as defendants and (2) Matrixx was unlikely to prevail on the underlying defamation claim. After considering the written and oral arguments of the parties, however, the trial court granted Matrixx's motion.

### Discussion

Appellants renew the arguments they presented below. They maintain that Gunnallenlies and Veritasconari have a fundamental First Amendment right to speak anonymously, which cannot be overcome absent a "valid" cause of

---

[1] In that lawsuit several companies had similarly alleged a scheme in which the defendants, using aliases, had posted defamatory statements about the plaintiffs on stock-related Internet message boards. That case settled, with defendants promising not to publish any more statements about any of the plaintiff companies or the individuals associated with them. Plaintiffs made a reciprocal promise.

[2] The issue of the Eyeshade Report cited by Veritasconari contained a detailed and largely unfavorable analysis of Matrixx.

action. In this case, they argue, Matrixx had failed to make a prima facie showing that the targeted postings were defamatory. Appellants also point out that Matrixx did not specify that Veritasconari was a Doe defendant or even mention Gunnallenlies in the complaint.[3]

In response, Matrixx raises a new argument: that appellants lack standing to assert the rights of Gunnallenlies and Veritasconari as a basis for resisting discovery. Matrixx contends that appellants are unable to satisfy the prerequisites for asserting the constitutional rights of another.

■ Although Matrixx did not raise this issue below, "the issue of standing is so fundamental that it need not even be raised below—let alone decided—as a prerequisite to our consideration." (*Payne v. Anaheim Memorial Medical Center, Inc.* (2005) 130 Cal.App.4th 729, 745 [30 Cal.Rptr.3d 230]; see also *Marshall v. Pasadena Unified School Dist.* (2004) 119 Cal.App.4th 1241, 1251 [15 Cal.Rptr.3d 344] [lack of standing not waived by failure to raise it in the trial court but may be raised at any point in the proceedings]; *Common Cause v. Board of Supervisors* (1989) 49 Cal.3d 432, 438 [261 Cal.Rptr. 574, 777 P.2d 610] ["contentions based on a lack of standing involve jurisdictional challenges and may be raised at any time in the proceeding"].) Moreover, appellants have had the opportunity to address the question in their reply brief and at oral argument.

■ Neither party, however, has submitted adequate authority or analysis on this fundamental question. Both cite *Powers v. Ohio* (1991) 499 U.S. 400 [113 L.Ed.2d 411, 111 S.Ct. 1364], which offered an exception to the general rule that in seeking relief litigants must assert their own legal rights rather than rely on the rights or interests of third parties. (*Id.* at p. 410.) The court limited the exception to circumstances in which three criteria are met: (1) the litigant suffers a distinct and palpable injury in fact, thus giving him or her a concrete interest in the outcome of the dispute; (2) the litigant has a close relationship to the third party such that the two share a common interest; and (3) there is some hindrance to the third party's ability to protect his or her own interests. (*Id.* at p. 411; *Lujan v. Defenders of Wildlife* (1992) 504 U.S. 555, 559–562 [119 L.Ed.2d 351, 112 S.Ct. 2130]; *Allen v. Wright* (1984) 468 U.S. 737, 751 [82 L.Ed.2d 556, 104 S.Ct. 3315].) The first criterion is derived from the "case or controversy" requirement of article III of the United States Constitution,

---

[3] Matrixx admits that it did not specifically mention Gunnallenlies, but it maintains that it was sufficient to designate both Gunnallenlies and Veritasconari as Doe defendants pursuant to the Arizona pleading rules. The applicable rule provides: "When the name of the defendant is unknown to the plaintiff, the defendant may be designated in the pleadings or proceeding by any name. When the defendant's true name is discovered the pleading or proceeding may be amended accordingly." (16 A.R.S. Rules of Civil Procedure, rule 10(f).)

which is not at issue here.[4] The second and third are "prudential" considerations that are invoked in the exercise of judicial restraint. (*Elk Grove Unified School Dist. v. Newdow* (2004) 542 U.S. 1, 11–12 [159 L.Ed.2d 98, 124 S.Ct. 2301].) "[P]rudential standing encompasses 'the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked.' " (*Id.* at p. 12.) "The prudential limitations add to the constitutional minima a healthy concern that if the claim is brought by someone other than one at whom the constitutional protection is aimed, the claim not be an abstract, generalized grievance that the courts are neither well equipped nor well advised to adjudicate." (*Secretary of State of Md. v. J. H. Munson Co., Inc.* (1984) 467 U.S. 947, 956, fn. 5 [81 L.Ed.2d 786, 104 S.Ct. 2839].) "Without such limitations—closely related to Art. III concerns but essentially matters of judicial self-governance—the courts would be called upon to decide abstract questions of wide public significance even though other governmental institutions may be more competent to address the questions and even though judicial intervention may be unnecessary to protect individual rights." (*Warth v. Seldin* (1975) 422 U.S. 490, 500 [45 L.Ed.2d 343, 95 S.Ct. 2197].)

■ "These principles rest on more than the fussiness of judges. They reflect the conviction that under our constitutional system courts are not roving commissions assigned to pass judgment on the validity of the Nation's laws. [Citation.] Constitutional judgments . . . are justified only out of the necessity of adjudicating rights in particular cases between the litigants brought before the Court." (*Broadrick v. Oklahoma* (1973) 413 U.S. 601, 610–611 [37 L.Ed.2d 830, 93 S.Ct. 2908].)

The United States Supreme Court has acknowledged that it has been "quite forgiving with these criteria in certain circumstances"—in particular, in First Amendment attacks on overly broad statutes. (*Kowalski v. Tesmer* (2004) 543 U.S. 125, 130 [160 L.Ed.2d 519, 125 S.Ct. 564, 567].) In such cases litigants "are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." (*Broadrick v. Oklahoma, supra,* 413 U.S. at p. 612.) "Even where a First

---

[4] Section 2 of article III confers on the judiciary the power to hear certain "Cases" and "Controversies." (U.S. Const., art. III, § 2, cl. 1.) The United States Supreme Court has articulated two other requirements for standing under this provision: The party must show (a) a causal connection between the injury and the conduct to which he or she objects; and (b) a substantial likelihood that the requested relief will remedy the alleged injury. (*McConnell v. FEC* (2003) 540 U.S. 93, 225–226 [157 L.Ed.2d 491, 124 S.Ct. 619]; *Lujan v. Defenders of Wildlife, supra,* 504 U.S. at pp. 560–561.)

Amendment challenge could be brought by one actually engaged in protected activity, there is a possibility that, rather than risk punishment for his conduct in challenging the statute, he will refrain from engaging further in the protected activity. Society as a whole then would be the loser. Thus, when there is a danger of chilling free speech, the concern that constitutional adjudication be avoided whenever possible may be outweighed by society's interest in having the statute challenged." (*Secretary of State of Md. v. J. H. Munson Co., Inc., supra,* 467 U.S. at p. 956.)

Neither the *Powers* criteria nor the exceptions find compelling application in the procedural circumstances before us. The applicable issue in most cases is whether a *plaintiff* has standing to bring an action or whether a *defendant* may challenge an action against him or her—in either case, based on the asserted violation of a nonparty's constitutional rights or the overbreadth of a statute. (See, e.g., *Virginia v. American Booksellers Assn.* (1988) 484 U.S. 383 [98 L.Ed.2d 782, 108 S.Ct. 636] [plaintiff booksellers may assert facial challenge to statute based on book buyers' First Amendment rights]; cf. *Eisenstadt v. Baird* (1972) 405 U.S. 438, 446 [31 L.Ed.2d 349, 92 S.Ct. 1029] [defendant had standing to assert privacy rights of unmarried persons denied access to contraceptives]; *Powers v. Ohio, supra,* 499 U.S. at p. 415 [criminal defendant may assert equal protection claims of jurors who were excluded by the prosecution because of their race].)

■ Where a third party is brought into the litigation, typically through a discovery order, the anonymous plaintiff or defendant normally steps forward to oppose the disclosure of his or her identity. (See, e.g., *Doe v. 2Themart.com, Inc.* (W.D.Wn. 2001) 140 F.Supp.2d 1088 [granting "Doe" plaintiff's motion to quash defendant's subpoena issued to Internet service provider (ISP) and allowing plaintiff to proceed anonymously]; *Rocker Management LLC v. John Does 1 Through 20* (N.D.Cal. May 29, 2003, No. 03-MC-33) 2003 U.S.Dist. LEXIS 16277, 2003 WL 22149380 [granting Doe defendant's motion to quash subpoena issued to ISP]; *Doe v. Cahill* (Del. 2005) 884 A.2d 451 [holding that trial court used incorrect legal standard when it denied Doe defendant's motion for protective order and compelled ISP to disclose Doe defendant's identity].)

■ The case before us, however, presents a different procedural posture: Here the litigants who are challenging discovery are not parties in the underlying action for which the discovery is sought, but instead are *themselves* the third parties in a lawsuit that may have nothing to do with them. Nevertheless, appellants believe they are justified in asserting the First Amendment rights of Veritasconari and Gunnallenlies—even though,

according to appellants' theory, these individuals were never actually accused of defamation in Matrixx's complaint.[5]

The closest analogous circumstances we have found are those described in *In re Subpoena Duces Tecum to America Online, Inc.* (Jan. 31, 2000, No. 40570) 52 Va.Cir. 26 [2000 WL 1210372] (*AOL*) (revd. on other grounds *America Online, Inc. v. Anonymous Publicly Traded Co.* (2001) 261 Va. 350 [542 S.E.2d 377]) and *In re Verizon Internet Services, Inc.* (D.D.C. 2003) 257 F.Supp.2d 244 (*Verizon*) (revd. on another ground *Recording Industry of America v. Verizon Internet* (D.C. Cir 2003) 351 F.3d 1229, 1239). In *AOL*, the plaintiff sought to discover the identities of an ISP's subscribers so that it could properly name them in its Indiana lawsuit. The federal district court allowed America Online, Inc. (AOL) to assert the First Amendment rights of the John Doe defendants, because compelling disclosure would harm AOL as well as those it was trying to protect. "If AOL did not uphold the confidentiality of its subscribers, as it has contracted to do, absent extraordinary circumstances . . . one could reasonably predict that AOL subscribers would look to AOL's competitors for anonymity. As such, the subpoena duces tecum at issue potentially could have an oppressive effect on AOL." (*AOL, supra*, 52 Va.Cir. at p. 32.)

In *Verizon*, another ISP sought to quash a subpoena issued by the Recording Industry Association of America under the Digital Millennium Copyright Act of 1998 (17 U.S.C. § 512(h)) (DMCA). The district court ruled that Verizon had standing to challenge the DMCA on behalf of its subscribers. In addition to society's concern about the chilling of Internet users' speech, the court noted that Verizon itself had "a vested interest in vigorously protecting its subscribers' First Amendment rights, because a failure to do so could affect Verizon's ability to maintain and broaden its client base."[6] (*Verizon, supra*, 257 F.Supp.2d at p. 258.)

In both the *AOL* and *Verizon* cases, the challenge to the subpoena was made by an entity with a sufficiently close relationship to the anonymous user that judicial consideration was warranted. (See also *NAACP v. Alabama* (1958) 357 U.S. 449, 458–460 [2 L.Ed.2d 1488, 78 S.Ct. 1163] [association had sufficient relationship with its nonparty members to assert their constitutional

---

[5] Appellants continue to argue on appeal that the complaint is "fatally defective" as it "contains no allegations of defamatory conduct as far as Gu[n]nallenlies and Veritasconari are concerned."

[6] The district court nonetheless went on to order Verizon to comply with the subpoena, finding no abridgement of subscribers' First Amendment rights and construing the DMCA to authorize disclosure of an anonymous user's identity. The court of appeals, however, disagreed with the district court's construction of the DMCA and reversed the district court's order on that ground alone. (*Recording Industry of America v. Verizon Internet, supra*, 351 F.3d at pp. 1231–1238.)

rights, and compelling it to produce membership list might adversely affect association through diminished financial support and membership].) Thus, the "close relationship" criterion of prudential standing was easily satisfied. In the case before us, by contrast, we are presented with no "close relationship"—or, indeed, *any* relationship—between appellants and the individuals for whom they are seeking First Amendment protection. (Cf. *Kowalski v. Tesmer, supra,* 543 U.S. at p. 131 [125 S.Ct. at p. 568] [no attorney standing where no "close relationship" existed with hypothetical future clients].)

The third prerequisite to standing is also lacking here. Appellants have neither demonstrated nor even suggested that there is some "hindrance" to the ability of Veritasconari and Gunnallenlies to protect their own interests. (*Powers v. Ohio, supra,* 499 U.S. at p. 411.)

Appellants offer no facts compelling a finding of standing beyond the unsupported assertion that Matrixx never provided any due process notice to Veritasconari or Gunnallenlies in connection with either its subpoena to Yahoo! or the subpoena to appellants. Even if it is assumed that Matrixx had the ability to provide adequate notice to those who were still anonymously posting on the affected message boards, there is no factual basis for inferring that Veritasconari and Gunnallenlies were unaware of the lawsuit and unable to assert this ground in opposing the discovery motion on their own behalf. Furthermore, appellants' "due process" argument merely begs the question of their standing to assert Gunnallenlies and Veritasconari's defenses.

■ Because appellants were not entitled to resist discovery by invoking the constitutional rights of presumably unrelated third parties, it is unnecessary—and, we believe, would be inappropriate—to proceed to consider what standard to employ in evaluating the merits of Matrixx's motion. "In an emerging area of the law, we do well to tread carefully and exercise judicial restraint, deciding novel issues only when the circumstances require." (*Mateel Environmental Justice Foundation v. Edmund A. Gray Co.* (2003) 115 Cal.App.4th 8, 20, fn. 6 [9 Cal.Rptr.3d 486]; see also *Lyng v. Northwest Indian Cemetery Prot. Assn.* (1988) 485 U.S. 439, 445 [99 L.Ed.2d 534, 209 S.Ct. 1319] [principle of judicial restraint requires courts to avoid reaching constitutional questions in advance of the necessity of deciding them]; *Santa Clara County Local Transportation Authority v. Guardino* (1995) 11 Cal.4th 220, 230 [45 Cal.Rptr.2d 207, 902 P.2d 225] [court will not decide constitutional questions where other grounds are available and dispositive of the issues].) Thus, we express no opinion whatsoever regarding the viability of Matrixx's defamation claim or the likelihood that Matrixx could prevail in the same discovery proceeding if Gunnallenlies or Veritasconari were directly involved. Whether Matrixx's showing of need for the information is sufficient

to overcome the free speech interests of Internet users such as Veritasconari and Gunnallenlies must await a case in which that issue is properly before the court.

## Disposition

The order is affirmed.

Bamattre-Manoukian, J., and Duffy, J., concurred.