Filed 11/13/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| YELP INC.,<br><br>    Petitioner,<br><br>        v.<br><br>THE SUPERIOR COURT OF ORANGE COUNTY,<br><br>    Respondent;<br><br>GREGORY M. MONTAGNA et al.,<br><br>    Real Parties in Interest. | G054358 consol. w/G054422<br><br>(Super. Ct. No. 30-2016-00848551)<br><br>O P I N I O N |
| GREGORY M. MONTAGNA et al.,<br><br>    Plaintiffs and Respondents,<br><br>        v.<br><br>YELP INC.,<br><br>    Objector and Appellant. | |

        Original proceedings; petition for a writ of mandate to challenge an order of the Superior Court of Orange County, Andrew P. Banks, Judge.  Consolidated with an

appeal from an order of the Superior Court of Orange County, Andrew P. Banks, Judge. Petition denied. Order reversed.

Law Offices of Adrianos Facchetti and Adrianos Facchetti; Aaron Schur and Connie Sardo for Petitioner, Objector, and Appellant.

Krongold Law and Steven L. Krongold for Real Parties in Interest, Plaintiffs and Respondents.

Aaron Mackey and Andrew Crocker for Electronic Frontier Foundation as Amicus Curiae on behalf of Petitioner, Objector, and Appellant.

Catherine R. Gellis for Floor64 as Amicus Curiae on behalf of Petitioner, Objector, and Appellant.

Perkins Coie, James G. Snell, Christian Lee, and Hayley L. Berlin for Automattic Inc., Dropbox, Inc., Facebook, Inc., Google Inc., Pinterest, Inc., Reddit, Inc., Snap, Inc., and Twitter, Inc., as Amici Curiae on behalf of Petitioner, Objector, and Appellant.

\* \* \*

Yelp Inc., which operates a website for consumer reviews, has petitioned for a writ of mandate to overturn an order compelling its production of documents that may reveal the identity of an anonymous reviewer on its site. Yelp also appeals from a separate order imposing $4,962.59 in monetary sanctions against it for failing to comply with the subpoena requiring production of the documents. Pursuant to the parties' stipulation, we have consolidated the writ proceeding with the appeal.

Yelp argues the orders must be reversed because: (1) the trial court erroneously concluded Yelp lacked standing to assert the First Amendment rights of its anonymous reviewer as grounds for resisting the subpoena; and (2) the court further erred by concluding plaintiff Gregory M. Montagna, Sr.,[1] made a prima facie showing the

---

[1] The plaintiffs in the lawsuit are Montagna and his corporation, Montagna & Associates, Inc. We refer to them collectively as "Montagna."

2

content of the review posted on Yelp's site by "Alex M.," the anonymous reviewer, was defamatory.

We agree the trial court erred in ruling Yelp lacked standing to assert the First Amendment rights of its anonymous reviewer, Alex M., but find no error in its determination Montagna made a prima facie showing the challenged review was defamatory. Consistent with the recent opinion *ZL Technologies, Inc. v. Does 1-7* (2017) 13 Cal.App.5th 603 (*ZL Technologies*), we conclude the latter finding was sufficient to support the trial court's order compelling Yelp to produce the subpoenaed documents in the circumstances of this case. We consequently deny the petition for writ of mandate.

However, given the dynamic nature of this area of law—the primary cases we rely upon were decided *after* the trial court issued its ruling—we also conclude Yelp's opposition to Montagna's motion to compel was substantially justified. We thus reverse the order imposing sanctions against Yelp.

FACTS

Montagna filed a lawsuit against Sandra Jo Nunis and several Doe defendants alleging a single cause of action for trade libel. According to the first amended complaint, Montagna, an accountant, prepared a tax return for Nunis in 2015. Montagna initially quoted Nunis a "minimum" fee of $200 for the preparation of her return, based on her representation that her income was comprised exclusively of wages reported on a W-2 form, and she would require only a simple return. However, both Nunis' income and the resulting tax return were allegedly more complicated than she had represented. As a consequence, Montagna charged Nunis $400 for preparation of the return, rather than the $200 fee he initially quoted.

Nunis allegedly paid Montagna only $200, and refused to pay him more even after receiving "a collection letter" for the balance. And in November 2015, Nunis allegedly went online to the Yelp website and posted the following review of Montagna,

3

using the alias Alex M.: "Too bad there is no zero star option! I made the mistake of using them and had an absolute nightmare. Bill was way more than their quote; return was so sloppy I had another firm redo it and my return more than doubled. If you dare to complain get ready to be screamed at, verbally harassed and threatened with legal action. I chalked it up as a very expensive lesson, hope this spares someone else the same."

Montagna alleged the following statements made by Nunis in the review were provably false: (1) the return he had prepared for her was accurate and complete; (2) he had not caused her to hire another firm to redo his work; (3) he was not negligent in preparing her return, such that her refund more than doubled; and (4) no one in his office screamed at, harassed, or threatened her.

Montagna allegedly sent a demand to Nunis, asking she retract the Yelp review, or correct the false and libelous statements, and warned her that if she failed to do so, legal action might be taken against her. Nunis, however, allegedly failed and refused to either delete or correct her review and Montagna thereafter filed the lawsuit.

In June 2016, Montagna served Yelp with a deposition subpoena seeking business records. Specifically, Montagna asked for copies of any and all documents that would identify the Yelp user Alex M., to either confirm Montagna's belief that the name was an alias used by Nunis, or discover the true identity of the anonymous reviewer. Yelp objected to the subpoena, arguing it violated the free speech rights of the anonymous Alex M., and it later refused to produce the documents.

After Montagna and Yelp engaged in an unsuccessful effort to resolve the discovery dispute, Montagna filed a motion for an order holding Yelp in contempt of court and compelling its compliance with the deposition subpoena. In October 2016, Yelp filed opposition to Montagna's motion. Both parties sought an award of monetary sanctions against the other.

4

The trial court treated Montagna's motion as simply a motion to compel compliance with his discovery request. The court granted the motion, finding (1) Yelp lacked standing to enforce the anonymous reviewer's First Amendment rights because it had failed to establish the second and third elements of the test set forth in *Matrixx Initiatives, Inc. v. Doe* (2006) 138 Cal.App.4th 872 (*Matrixx*), and (2) even if Yelp had standing to assert the reviewer's first amendment rights, Montagna had alleged facts sufficient to demonstrate a defamatory statement by the anonymous reviewer, Alex M., and was thus entitled to discovery regarding that reviewer's identity. Consequently, the court ordered Yelp `to comply with the subpoena by December 9.

Although the trial court's tentative ruling was to deny Montagna's request for monetary sanctions against Yelp, it was persuaded at the hearing to take that issue under submission. And on December 2, the court issued a second order, imposing $4,962.59 in sanctions against Yelp.

On December 7, two days before the trial court's deadline for compliance with its discovery order, Yelp filed a petition for a writ of mandate in this court, seeking an immediate stay of that order. On December 8, we issued the requested stay and invited Montagna to file an informal response to the petition.

Yelp also filed a separate appeal from the sanction order, and the parties stipulated to consolidate the writ proceeding with that appeal. We subsequently accepted amicus briefs in support of Yelp's position on the standing issue, from (1) Electronic Frontier Foundation, (2) Automatic, Inc., Dropbox, Inc., Facebook, Inc., Google, Inc., Pinterest, Inc., Reddit, Inc., Snap Inc., and Twitter, Inc., and (3) Floor64, Inc., d/b/a The Copia Institute.

DISCUSSION

*I. Standing*

Yelp first contends the trial court erred in concluding it lacked standing to challenge Montagna's subpoena based on the First Amendment rights of its anonymous

5

reviewer, Alex M. We agree. In reaching its conclusion, the trial court relied on *Matrixx*, a case involving anonymous postings to an online message board. However, as pointed out in the recent case of *Glassdoor, Inc. v. Superior Court* (2017) 9 Cal.App.5th 623 (*Glassdoor*), *Matrixx* is distinguishable.

In *Matrixx*, a pharmaceutical company filed a lawsuit claiming that several anonymous posts to the online message board had defamed it. (*Matrixx, supra*, 138 Cal.App.4th at p. 875.) The company was able to trace the posts to the offices of a San Francisco hedge fund, and it took the deposition of that fund's manager to identify the anonymous poster. (*Id.* at p. 876.) The manager, however, refused to answer questions, citing the posters' "First Amendment right to speak anonymously." (*Ibid.*) On appeal, the court held the manager lacked standing to assert the constitutional rights of those third party posters. (*Id.* at pp. 877-881.)

The *Matrixx* court relied on *Powers v. Ohio* (1991) 499 U.S. 400 (*Powers*), for the proposition three criteria must be satisfied to establish an exception to the general rule "that . . . litigants must assert their own legal rights rather than rely on the rights or interests of third parties." (*Matrixx, supra*, 138 Cal.App.4th at p. 877.) The three criteria are: "(1) the litigant suffers a distinct and palpable injury in fact, thus giving him or her a concrete interest in the outcome of the dispute; (2) the litigant has a close relationship to the third party such that the two share a common interest; and (3) there is some hindrance to the third party's ability to protect his or her own interests. [Citations.]" (*Id*. at p. 877.) The court noted the first consideration—the "distinct and palpable injury" criterion—was not at issue in the case. (*Id.* at p. 877.) The same is true here, as Montagna obviously does not assert there is no viable "'case or controversy'" pending before the court. (*Ibid.*)

In its analysis, however, the *Matrixx* court noted it was presented with an unusual procedural posture for analyzing third party standing because "the litigants who are challenging discovery are not parties in the underlying action for which the discovery is sought, but instead are *themselves* the third parties in a lawsuit that may have nothing

6

to do with them." (*Matrixx, supra*, 138 Cal.App.4th at p. 879.) The cases it found most closely analogous were *In re Subpoena Duces Tecum to America Online, Inc*. (Jan. 31, 2000, No. 40570) 52 Va. Cir. 26, 32 (revd. on other grounds *America Online, Inc. v. Anonymous Publicly Traded Co.* (2001) 261 Va. 350) (*AOL*), and *In re Verizon Internet Services, Inc.* (D.D.C. 2003) 257 F.Supp.2d 244, 258 (revd. on other grounds *Recording Industry Ass'n. of America, Inc. v. Verizon Internet Services, Inc.* (D.C. Cir. 2003) 351 F.3d 1229, 1239) (*Verizon*). (*Matrixx, supra*, 138 Cal.App.4th at p. 880.)

In both *AOL* and *Verizon*, the courts found the interests of internet service providers (ISPs) to be sufficiently intertwined with those of their subscribers that it was proper to accord the ISPs standing to assert their subscribers' First Amendment rights in the action. As explained in *AOL*, "If AOL did not uphold the confidentiality of its subscribers, as it has contracted to do, absent extraordinary circumstances . . . one could reasonably predict that AOL subscribers would look to AOL's competitors for anonymity. As such, the subpoena duces tecum at issue potentially could have an oppressive effect on AOL." (*AOL, supra*, 52 Va. Cir. at p. 32; see *Verizon*, *supra*, 257 F.Supp.2d at p. 258 [noting Verizon itself had "a vested interest in vigorously protecting its subscribers' First Amendment rights, because a failure to do so could affect Verizon's ability to maintain and broaden its client base"].)

The *Matrixx* court expressly noted that in both *AOL* and *Verizon*, "the challenge to the subpoena was made *by an entity with a sufficiently close relationship to the anonymous user that judicial consideration was warranted*" (*Matrixx, supra*, 138 Cal.App.4th at p. 880, italics added), but then distinguished the situation before it from those cases. As the court explained, by contrast to the ISPs in *AOL* and *Verizon*, which could "easily satisf[y]" the "'close relationship' criterion of prudential standing" (*Matrixx, supra*, 138 Cal.App.4th at p. 881), the hedge fund manager before it claimed *no relationship* with the anonymous poster whose identities were being sought by the

7

pharmaceutical company. Given that circumstance, the hedge fund manager "offer[ed] no facts compelling a finding of standing . . . ." (*Ibid.*)

Significantly, this case is distinguishable from *Matrixx* on the exact same basis that *Matrixx* distinguished the *AOL* and *Verizon* cases. Here, Yelp is the host of the website where the anonymous Alex M. posted the review of Montagna's professional services, and it has a substantial interest in protecting the right of its users to maintain their anonymity when posting reviews.

In its terms of service, Yelp specifically acknowledges its users may "use a pseudonym" when posting reviews, and cautions them to "take care to note that others may still be able to identify you if, for example, you include identifying information in your reviews." And although Yelp also informs its users "that we may disclose information about you to third parties" in certain circumstances,[2] the clear implication is that it will not do so willingly, without a compelling reason. Thus, Yelp occupies a similar position to the ISPs in *AOL* and *Verizon*, both of which the *Matrixx* court concluded could "easily satisf[y]" the close relationship requirement for establishing third party standing. (*Matrixx, supra*, 138 Cal.App.4th at p. 881.)

Other courts, both before and after *Matrixx*, have also concluded a content provider had standing to assert the First Amendment and privacy interests of a third party who contributed content anonymously. In *Rancho Publications v. Superior Court* (1999) 68 Cal.App.4th 1538, 1541, this court allowed a nonparty newspaper "to assert the constitutionally protected rights of an author to remain unknown." And in *Digital Music*

---

[2]      The circumstances described are "if we have a good faith belief that such a disclosure is reasonably necessary to (i) take action regarding suspected illegal activities; (ii) enforce or apply our Terms and Privacy Policy; (iii) comply with legal process or other government inquiry, such as a search warrant, subpoena, statute, judicial proceeding, or other legal process served on us; or (iv) protect our rights, reputation, and property, or that of our users, affiliates, or the public."

*News LLC v. Superior Court* (2014) 226 Cal.App.4th 216, 230, footnote 12 (disapproved on other grounds in *Williams v. Superior Court* (2017) 3 Cal.5th 531, 557, fn. 8 (*Williams*)), the court concluded the operator of a digital music site had standing to assert the constitutional privacy right of an anonymous commenter on the site.

Moreover, in March 2017, the Sixth District Court of Appeal—the same court which issued the *Matrixx* opinion—issued its opinion in *Glassdoor*, holding that a website host had standing to assert the First Amendment rights of a third party who posted an allegedly defamatory review on its site. (*Glassdoor, supra*, 9 Cal.App.5th at p. 634.) And *Glassdoor* distinguished the court's earlier *Matrixx* opinion on the same ground we do here, explaining: "Glassdoor is not an avowed stranger to the speaker, as was the objector in *Matrixx*. It is the acknowledged *publisher* of the speech at issue. Such a publisher has a strong interest in protecting the right of its users to speak anonymously." (*Id.* at p. 630.)

Rather, *Glassdoor* explained the situation before it "is the same as in the cases distinguished by *Matrixx*. As Glassdoor's corporate counsel declared, its business model 'relies on maintaining its users' anonymity. The reliability of the information on glassdoor.com would likely decrease if litigants could readily obtain users' identities, because users would fear retaliatory litigation based on the information they posted.' This would naturally tend to harm Glassdoor's interests, because its usefulness to potential readers depends on the degree to which posters feel able to frankly recount their employment experiences without fear of adverse consequences. . . . [¶] Anonymous publication thus furnishes not only the medium through which persons like Doe exercise their First Amendment rights, but is also a significant asset in Glassdoor's business—an asset in which Glassdoor possesses a direct pecuniary interest squarely aligned with the interest of each anonymous content provider. This symbiosis constitutes a 'sufficiently close relationship . . . that judicial consideration [i]s warranted.' (*Matrixx, supra*, 138 Cal.App.4th at p. 880.)" (*Glassdoor, supra*, 9 Cal.App.5th at pp. 630-631.)

9

Additionally, *Glassdoor* concluded the website host need not affirmatively establish there is a ""'"hindrance to the third party's ability to protect his or her own interests'"'" to justify standing: "The quoted requirement is one of the limitations on standing adopted by federal courts. [Citation.] It is not, however, among the *jurisdictional* constraints arising from the constitutional requirement of a 'case[ ]' or 'controvers[y].' [Citations.] It is instead one of the *prudential* considerations intended to protect the integrity of the judicial process. As such, it is to be flexibly applied in a manner befitting its purposes, and 'should not be applied where its underlying justifications are absent.' [Citation.]" (*Glassdoor, supra*, 9 Cal.App.5th at p. 631.)

The court explained the justifications for applying a hindrance requirement were "the undesirability of triggering an unnecessary adjudication where the holder of the rights at issue 'do[es] not wish to assert them, or will be able to enjoy them regardless of whether the in-court litigant is successful or not,' and the desirability of ensuring that the third party's interests are not represented by an inadequate advocate. [Citation.]" (*Glassdoor, supra*, 9 Cal.App.5th at p. 631.) And the court reasoned that neither justification was implicated in the case where a website host was seeking to assert the First Amendment rights of an anonymous reviewer: "Here the first objective does not appear to be at issue since [the reviewer] has already asserted his right to speak anonymously and Glassdoor's disclosure of his identity would effectively destroy that right. Nor do we see any reason to suppose that [the reviewer] would be a better advocate than Glassdoor. Indeed, it appears that in settings like this one, the opposite will typically be true. Several cases in similar contexts have disposed of the 'hindrance' issue on the rationale that anonymous speakers cannot represent their own interests without sacrificing the very anonymity they seek to protect." (*Glassdoor, supra*, 9 Cal.App.5th at pp. 631-632.)

Although Montagna argues *Glassdoor* is wrongly decided for several reasons, we find none of them persuasive. Montagna first claims that *Glassdoor* errs by

10

according the host of an online review site the same third-party standing that would traditionally be given to a newspaper. As he explains: "[the website host] is not a newspaper publisher protecting the anonymity of its source. The pseudonymous author is not an aggrieved citizen speaking out on political, religious, or social issues at the core of First Amendment protection. [Instead, t]he gravamen of the lawsuit involves commercial speech on a private matter: grievances about the quality of service from a local business." And as Montagna points out, commercial speech is entitled to less protection under the First Amendment than other kinds of speech.

But as Yelp points out, the argument mischaracterizes "commercial speech." Speech is not denominated "commercial" based on whether the *topic* it addresses involves commerce. Rather, as our Supreme Court explained in *Kasky v. Nike, Inc.* (2002) 27 Cal.4th 939, speech is typically found to be "commercial" when *the speaker* is engaged in commerce, the intended audience is actual or potential buyers or customers *of the speaker's goods or services*, *and* the factual content is commercial in character. (*Id.* at p. 960.) In short, the type of "commercial speech" that is accorded less First Amendment protection is comprised largely of statements made *by* those engaged in commerce relating to their business—not statements made *about* them by consumers. That does not describe the speech at issue in this case.

Montagna also argues *Glassdoor* inaccurately claims "that a 'substantial preponderance of national authority favors the rule that publishers, *including Web site operators*, are entitled to assert the First Amendment interests of their anonymous contributors in maintaining anonymity.'" (*Glassdoor, supra*, 9 Cal.App.5th at p. 629.) However, Montagna's quibble with this claim is partly based on its contention website hosts that publish anonymous content must be distinguished from newspapers that publish anonymous content—a contention he fails to support with any persuasive distinction.

11

Other than his inaccurate contention that reviews posted on sites such as Yelp are mere "commercial speech," Montagna argues only that newspapers are different than websites like Yelp because they "create or edit" content, and thus can be held directly liable for defamation on the same basis as their anonymous authors. By contrast, he claims "publishers and distributors of online content," are statutorily immune to such liability. (Citing 47 U.S.C. § 230, subd. (c)(1).) But if the content publisher's ability to assert third-party standing were limited to situations where the publisher could be held directly liable for the content at issue, it would serve little purpose. And Montagna cites no cases supporting such a rule.

Montagna asserts the statute that shields Internet providers like Yelp from direct liability for the content posted by third parties on their sites distinguishes them from traditional newspapers because it creates a perverse incentive for the providers to "encourage users to register and post comments regardless of whether the comments are true or not. In fact, the more controversial and offensive the comments, the more interest is generated, which, of course, leads to more web traffic and advertising revenue." But even if that were true, Montagna fails to explain how that distinction would affect the providers' *standing* to assert the First Amendment interests of their users. And we cannot see how it would.

Montagna also claims *Glassdoor* erroneously relies on *AOL* and *Verizon* as a basis for finding third-party standing, noting those cases "did not involve a libel plaintiff seeking to uncover the identity of a potential defendant." Instead, the ISPs in *AOL* and *Verizon* were asserting the rights of their subscribers to challenge an overbroad statute that had a potentially chilling effect on the subscribers' free speech. But again, Montagna fails to explain how that distinction would materially affect the courts' conclusions regarding the standing of the ISP. In both *AOL* and *Verizon*, the courts focused on the fact the ISP would likely *lose subscribers* if it did not act to protect their First Amendment rights. The same is true here. If Yelp reviewers believed it would

12

reveal their identities to any plaintiff who demanded it do so as part of discovery in a lawsuit, we have no doubt it would lose a segment of those reviewers. Consequently, we conclude that like the ISPs in *AOL* and *Verizon*, Yelp also has a significant stake in "vigorously protecting its [reviewers'] First Amendment rights, because a failure to do so could affect [its] ability to maintain and broaden its client base." (*Verizon, supra,* 257 F.Supp.2d at p. 258.)

Moreover, we reject Montagna's suggestion Yelp cannot claim to be aligned with Alex M.'s privacy interests in this case, when it seeks to separate itself from the interests of its users in other contexts. As Montagna laments, "Yelp and other websites pick and choose when they are aligned with their users." But of course, Yelp is free to argue its interests align with its users, or do not, in whatever *different* contexts it chooses. Yelp is not claiming *to be* its users. What Yelp cannot persuasively do is argue its interests are both aligned, and divergent, from those of its users in the *same* context. And it has not.

Finally, Montagna contends *Glassdoor* has erroneously dispensed with the hindrance requirement of third party standing. We disagree. What *Glassdoor* did was emphasize a point also acknowledged in *Matrixx*, which is that hindrance—i.e., a demonstration that the party whose First Amendment rights are being asserted is somehow hindered from asserting them directly—is not a *requirement*, but merely a "prudential consideration[] intended to protect the integrity of the judicial process." (*Glassdoor, supra*, 9 Cal.5th at p. 631.) The justifications for including it are to ensure the third party is not attempting to enforce the rights of a person who does not want to assert them, and that the third party can adequately advocate for the interests of the person whose rights are being asserted. (*Ibid*.) And the *Glassdoor* court reasoned those concerns were satisfied in the case where the person whose rights were at issue had already demonstrated a desire to remain anonymous, and the third party who was

13

asserting that right is the website host that benefitted from their ability to do so. (*Id*. at p. 632.) We agree.

Further, while it is true, as the *Glassdoor* court acknowledges, that California allows a party to appear and "defend the right to anonymity under a fictitious name," it also notes that party might also be effectively hindered in offering evidence to support that defense, or by the inability to appear in person. (*Glassdoor, supra*, 9 Cal.5th at p. 632.) At a minimum, the anonymous party would have to hire counsel to represent it in defending his or her anonymity. Given that practical consideration, both the anonymous party's and the court's interests might be better served by allowing the website host to assert the party's right to remain anonymous.

Based on all of the foregoing, we concur with *Glassdoor* in holding that a website host such as Yelp has standing to assert the First Amendment rights of persons who post reviews anonymously on its site, as against an effort to compel Yelp to identify those persons.

## II. *Propriety of Compelling Yelp's Production of Documents*

Having determined Yelp has standing to assert Alex M.'s First Amendment rights in opposing production of documents that might reveal his or her identity, we turn to the issue of whether the trial court's order compelling the production was correct on the merits. We conclude it was.

In *ZL Technologies*, the First District Court of Appeal recently analyzed the showing a plaintiff must make to justify an order compelling a website host to produce identifying information about a person who allegedly defamed the plaintiff in comments posted anonymously on the site. (*ZL Technologies, supra*, 13 Cal.App.5th at p. 610.) As the court explained, such cases require the courts to resolve "'a conflict between a plaintiff's right to employ the judicial process to discover the identity of an allegedly libelous speaker and the speaker's First Amendment right to remain anonymous.' [Citation.]" (*Ibid.*)

14

The *ZL Technologies* court noted, "'the constitutional right to publish anonymously' has long been recognized as "'an aspect of the freedom of speech protected by the First Amendment." [Citations.]' [Citation.]." (*ZL Technologies, supra*, 13 Cal.App.5th at p. 611.) However, "'[w]hen vigorous criticism descends into defamation,' . . . 'constitutional protection is no longer available.' [Citations.]" (*Ibid.*) Thus, a plaintiff seeking discovery of the anonymous person's identity must first make a prima facie showing the comment at issue is defamatory. (*Id.* at p. 613.) Adopting the test in *Krinsky v. Doe 6* (2008) 159 Cal.App.4th 1154, 1172, footnote 14 (*Krinsky*), the court stated that an appropriate showing requires "evidence "'that . . . will support a ruling in favor of [the plaintiff] if no controverting evidence is presented. [Citations.] It may be slight evidence which creates a reasonable inference of [the] fact sought to be established but need not eliminate all contrary inferences. [Citation.]" [Citations.]' [Citation.]" (*ZL Technologies, supra*, 13 Cal.App.5th at p. 612.)

Further, the *ZL Technologies* court stated that before the trial court orders the production of information identifying the anonymous commenter, it "must ensure reasonable efforts are made to notify the [commenter], permitting them an opportunity to respond, before disclosure of their identities may be compelled." (*ZL Technologies, supra*, 13 Cal.App.5th at p. 615.) In doing so, however, the court rejected the suggestion that it should be the burden of the plaintiff seeking discovery to make those efforts. The court acknowledged that often the plaintiff's only means of contacting the anonymous commenter would be to post a notice on the same website where the original comment had been posted, and requiring the plaintiff to do that would effectively be compelling it to "'exacerbate its own injury'" by republishing the alleged defamation. (*Ibid.*) Instead, "the trial court should direct the subpoenaed party to provide [the notice]." (*Ibid.*)

We agree with that analysis. As between the plaintiff seeking to discover the identity of the anonymous commenter, and the website host that presumptively knows the identity or has access to information that may reveal it, it makes little sense to place

15

the burden of notification on the former. And placing the burden on the website host seems especially appropriate in circumstances such as these, where the host *is depending on the rights of the anonymous commenter* as the basis for defending the discovery request.

In this case, Yelp does not challenge the sufficiency of notice to Alex M. as a basis for challenging the order compelling its production of documents, and thus we need not reach the issue. However, we note that not only did Montagna affirmatively assert he contacted Nunis, the former client he believes is Alex M. (or at a minimum, has some relationship with Alex M.), but Yelp informs us it also reached out via e-mail to Alex M., using the e-mail address provided in connection with the account.

Finally, *ZL Technologies* rejected the assertion that even after the plaintiff has made a prima facie showing of defamation, the court should be required to apply a final "balancing test, weighing 'the defendant's First Amendment right of anonymous free speech against the strength of the prima facie case presented and the necessity for the disclosure of the anonymous defendant's identity to allow the plaintiff to properly proceed.'" (*ZL Technologies, supra*, 13 Cal.App.5th at p. 616, quoting *Dendrite Internat. v. Doe No. 3* (App. Div. 2001) 342 N.J.Super. 134, [775 A.2d 756].) As the court instead concluded, "a further balancing should not be required '*[w]here it is clear to the court that discovery of the defendant's identity is necessary to pursue the plaintiff's claim*,' and the plaintiff makes a prima facie showing that a libelous statement has been made." (*ZL Technologies, supra*, 13 Cal.App.5th at p. 617, fn. omitted.) Again, we agree.

Indeed, as our Supreme Court reaffirmed only recently in *Williams, supra,* 3 Cal.5th at page 541 (*Williams*), "a civil litigant's right to discovery is broad. '[A]ny party may obtain discovery regarding any matter, not privileged, that is relevant to the subject matter involved in the pending action . . . if the matter either is itself admissible in evidence or appears reasonably calculated to lead to the discovery of admissible evidence.' [Citations.] *This right includes an entitlement to learn 'the identity and*

16

*location of persons having knowledge of any discoverable matter*.' [Citation.] Section 2017.010 and other statutes governing discovery 'must be construed liberally in favor of disclosure unless the request is clearly improper by virtue of well-established causes for denial.' [Citation.] This means that '*disclosure is a matter of right unless statutory or public policy considerations clearly prohibit it*.' [Citation.]" (Italics added, fn. omitted.)

In *Williams*, the Supreme Court upheld an order requiring an employer to disclose the identities and contact information of employees, as part of discovery in a lawsuit alleging violations of employee rights under the Labor Code. (*Williams, supra*, 3 Cal.5th at p. 554.) In doing so, the Court emphasized the importance of a plaintiff's right to take discovery as a means of obtaining the information necessary to prove its case, and disapproved earlier cases suggesting that "a party seeking discovery of private information [must] always establish a compelling interest or compelling need" before courts will compel the production of the information. (*Id.* at p. 557.)

Although *Williams* is not directly on point, it strongly suggests our Supreme Court would agree with *ZL Technologies*' conclusion that a separate compulsory "balancing test" need not be applied in a case where the plaintiff has already demonstrated a prima facie case of defamation. Consequently, we turn to the issue of whether the trial court correctly determined Montagna did that in this case.

*A. Defamatory Content of Alex M.'s Review*

Alex M.'s review of Montagna stated: "Too bad there is no zero star option! I made the mistake of using them and had an absolute nightmare. Bill was way more than their quote; return was so sloppy I had another firm redo it and my return more than doubled. If you dare to complain get ready to be screamed at, verbally harassed and threatened with legal action. I chalked it up as a very expensive lesson, hope this spares someone else the same."

Yelp contends the content of the review does not support a prima facie claim for defamation, largely because it purportedly states only opinions. As Yelp

17

correctly points out, to support a defamation claim, the alleged statement must be one that is reasonably interpreted as stating *actual facts* that are *provably false*. "The dispositive question . . . is whether a reasonable trier of fact could conclude that the published statements imply a provably false factual assertion." (*Seelig v. Infinity Broadcasting Corp.* (2002) 97 Cal.App.4th 798, 809 (*Seelig*).)

We are unpersuaded by Yelp's contention because we cannot agree with its characterization of the review. While it is true that pure expressions of opinion are not actionable, "[t]hat does not mean that statements of opinion enjoy blanket protection. [Citation.] To the contrary, where an expression of opinion implies a false assertion of fact, the opinion can constitute actionable defamation. [Citation.]" (*GetFugu, Inc. v. Patton Boggs LLP* (2013) 220 Cal.App.4th 141, 156 (*GetFugu*).)

The issue of whether challenged statements convey the requisite factual imputation is a question of law for the court. (*Seelig*, *supra*, 97 Cal.App.4th at p. 810.) And when ascertaining whether the statements in question are provably false factual assertions, courts consider the ""totality of the circumstances."" (*Id*. at p. 809.) "The critical question is not whether a statement is fact or opinion, but "'whether *a reasonable fact finder could conclude* the published statement declares or implies a provably false assertion of fact."' [Citation.]" (*GetFugu, supra*, 220 Cal.App.4th at p. 156, italics added.)

In this case, Alex M. began her review of Montagna's professional services by stating "Too bad there is no zero star option! I made the mistake of using them and had an absolute nightmare." While we would agree this opening salvo states a pure opinion, it also provides crucial context that can be considered in evaluating the comments that follow. (See *Wong v. Jing* (2010) 189 Cal.App.4th 1354 (*Wong*).) And what these opening comments reflect is that Alex M. is feeling *very aggrieved* by his/her experience with Montagna, having rated it as low as possible and referring to it as a "nightmare."

18

In *Wong*, a case with strikingly similar facts, a Yelp reviewer began a review of a dentist by stating "Let me first say I wish there is [*sic*] '0' star in Yelp rating. Avoid her like a disease!" (*Wong, supra,* 189 Cal.App.4th at p. 1361.) The appellate court expressly relied upon those introductory statements as part of the circumstances that would support a fact finder's determination the review had falsely *implied* the plaintiff engaged in specific acts of professional wrongdoing—even though the review *did not explicitly state* she had done those things: "Given (1) Jing's introductory remarks that Wong deserves a zero rating and should be avoided 'like a disease' and that he regretted ever bringing his son to see her, (2) his rage at Wong's use of amalgam because it contains mercury, and (3) Wong's evidence that Jing was advised and consented to the use of amalgam, a jury reasonably could find that the review falsely implied Wong had failed to warn and advise about silver amalgam and arguably better alternatives to its use." (*Id.* at pp. 1371-1372.)

Here, the rage expressed by Alex M. about Montagna is similarly palpable, and her stated regret at the lack of a zero star option is identical. She then follows her "nightmare" characterization of her dealings with Montagna by first stating "[the b]ill was way more than their quote." Yelp argues this statement is factually true, based on Montagna's allegation he had billed his client Nunis (whom he suspects to be Alex M.) $400 for preparing her tax returns, after quoting her a price of only $200. But we conclude a reasonable fact finder could find that Alex M. is implying Montagna had *no justification* for his price hike–hence the rage. "A statement can . . . be libelous per se if it contains a charge by implication from the language employed by the speaker and a listener could understand the defamatory meaning without the necessity of knowing extrinsic explanatory matter. [Citation.]" (*McGarry v. University of San Diego* (2007) 154 Cal.App.4th 97, 112.) Alex M.'s statement meets that test.

Montagna specifically alleges facts demonstrating his price hike vis-à-vis Nunis was justified. He states his original quote to Nunis was based on her specific

19

representations as to the scope of work that would be necessary to prepare her tax return. And when those representations proved incorrect, Montagna allegedly had to do significantly more work than anticipated to prepare the returns, and was thus justified in charging her a higher fee. Hence, Montagna adequately alleges Alex M.'s implied assertion he hiked her fee without justification was a provably false assertion of fact. He then supported those allegations in the declaration he submitted in support of his motion to compel.

Alex M.'s review continued with the assertion "[the] return was so sloppy I had another firm redo it and my return more than doubled." Yelp contends the assertion Montagna's work was "sloppy" is merely an opinion. We agree—the word "sloppy" is inherently vague, and in this context might refer to a wide variety of issues, including the possibility the returns were entirely accurate, but plagued with typos. However, Alex M. did not confine her comment to that abstract claim of sloppiness.

Instead, Alex M. stated the return was "so sloppy *I had another firm redo it and my return [sic: refund] more than doubled*." (Italics added.) That implies the return was not merely messy, but was prepared *improperly and inaccurately*—i.e. that Montagna's work did not comply with the standards of his profession—flaws so significant they necessitated the return being redone by someone else. Moreover, the statement includes an explicit factual claim that when the return was redone, the amount of Alex M.'s refund "doubled." That is a clear, provable statement of fact, which if false, could support a claim of defamation. (*Wong, supra*, 189 Cal.App.4th at p. 1372 [false statement is defamatory if "it could subject Wong to contempt and cause her to be avoided and thereby injure her professional career"].)

Again, Montagna specifically alleged Alex M.'s statement was false, stating, "Plaintiffs prepared accurate, clean returns in full compliance with applicable laws and regulations; Plaintiffs did not cause Defendant to hire another firm to redo his

20

work; Plaintiffs were not negligent in any manner such that Defendant's tax refund more than doubled." And he restated those facts in his declaration.

Finally, Alex M. concluded her review of Montagna by stating "[i]f you dare to complain get ready to be screamed at, verbally harassed and threatened with legal action. I chalked it up as a very expensive lesson, hope this spares someone else the same." Yelp contends the assertion that Montagna's future clients should expect to be screamed at, harassed, and threatened cannot support a defamation claim because it constitutes only a "prediction as to the occurrence of a future event," and such predictions cannot be proven true or false. Once again, we disagree with Yelp's characterization of the statement.

In our view, a trier of fact could reasonably include Alex M.'s "prediction" of what future clients might expect is also an implied representation as to the manner in which Montagna (and perhaps his staff) actually treated Alex M. The implication is that Montagna and his staff screamed at, harassed, and threatened Alex M. when he or she dared to complain, and moreover that they did so without justification. Indeed, the implied assertion Montagna and his staff will abuse clients *without justification* is at the heart of Alex M.'s suggestion that *any* future client should prepare to receive similar treatment. Montagna alleges in his complaint those implied assertions of fact are false: "Plaintiffs did not scream, harass, or threaten Defendant." He repeats that assertion in his declaration.

Yelp also contends that some of the statements in Alex M.'s review cannot actually be proved false because we do not yet know who Alex M. is. For example, Yelp points out, "Plaintiffs have not alleged—let alone provided prima facie evidence demonstrating—that *none of their clients* have ever hired another firm to redo a return that Plaintiffs had done. In fact, it is unlikely that Plaintiffs would have knowledge of such a situation, as it would necessarily have occurred after Plaintiffs provided services to such a client."

21

But the assertion fails for several reasons. First, it focuses on only one aspect of Alex M.'s statement, stripping it of its defamatory context. The claim was not merely the relatively anondyne assertion Alex M.'s tax return was redone by another tax preparer; instead, it was that the return had to be redone *because Montagna's work was negligent*, and the second tax preparer had so improved on it *that the size of Alex M.'s refund doubled*. Montagna denied that more specific contention, not only in his complaint, but in his declaration: "I prepared accurate, clean returns in full compliance with applicable laws and regulations; I did not cause Defendant to hire another firm to redo his work; I was not negligent in any manner such that Defendant's tax refund more than doubled."

Additionally, as Montagna points out, Yelp cannot be allowed to defend against his discovery request by asserting he should not be entitled to information about the identity of its anonymous reviewer unless he can first demonstrate, with specificity, that the review does not accurately portray his actions in connection *with that particular client*—something he cannot do without first identifying the reviewer. Indeed, the assertion amounts to bootstrapping. As *Williams* makes clear, the purpose of discovery in a civil case is to assist parties in seeking the information they need to establish their case or defense, not to reward those who can demonstrate they have already done so. In the *Krinsky* case, the court recognized this, making clear that a plaintiff seeking to unmask an anonymous Internet commenter cannot be faulted for the inability to provide evidence of facts that can only be known after the anonymous commenter has been identified. (*Krinsky, supra,* 159 Cal.App.4th at p. 1172 [plaintiff "need produce evidence of only those material facts that are accessible to her"].)

In this case, Montagna has been forthright in acknowledging he believes his former client Nunis is Alex M., and in alleging facts demonstrating that while there are some parallels between his experience with Nunis and the factual claims made by Alex M., those factual claims are false. Montagna has also made clear that if discovery reveals

22

his reviewer is not Nunis (or someone connected to her), he intends to dismiss her as a defendant in the lawsuit, and to substitute the real Alex M. in her place. It is difficult to imagine what more Montagna could have reasonably done to justify the unveiling of his accuser. We certainly do not adopt Yelp's implication that in the absence of knowing Alex M.'s identity, Montagna should be required to both allege, and declare under penalty of perjury, that "none of [his] clients" has ever experienced any of the things Alex M. alleges occurred to him or her. Montagna's ability to pursue a claim against Alex M. should not depend on his ability to swear he is professionally unassailable *by anyone* on each and every point the anonymous Alex M. complains about.

In the circumstances of this case, we conclude Montagna has demonstrated a sufficient prima facie case of defamation to justify an order compelling Yelp to produce information regarding the identity of Alex M. We consequently deny Yelp's petition for a writ of mandate overturning the trial court's order compelling it to comply with Montagna's deposition subpoena.

### III. Sanctions

In its consolidated appeal, Yelp also challenges the trial court's order imposing monetary sanctions against it for failing to voluntarily comply with Montagna's deposition subpoena. The trial court is required to award monetary sanctions against any party "who unsuccessfully makes or opposes a motion to compel an answer or production, *unless it finds that the one subject to the sanction acted with substantial justification or that other circumstances make the imposition of the sanction unjust*." (Code Civ. Proc., § 2025.480, subd. (j), italics added.)

The trial court's tentative decision was to deny Montagna's request for sanctions against Yelp, but it was persuaded at oral argument to take the issue under submission even as it confirmed its tentative decision to grant Montagna's motion to compel. Two weeks later, the court issued its sanction order, imposing $4,962.59 in sanctions against Yelp.

23

Yelp contends the court abused its discretion by failing to find Yelp acted with substantial justification in opposing the motion to compel production. As it notes, "Courts have held that substantial justification exists to oppose a motion to compel where 'novel questions' are presented in a case or where there is 'conflicting legal authority on an unsettled issue.'" (Quoting *Union Mut. Life Ins. Co. v. Superior Court* (1978) 80 Cal.App.3d 1, 15.) Indeed, in *Diepenbrock v. Brown* (2012) 208 Cal.App.4th 743, 749, the appellate court reversed a discovery sanction order, finding that while the court may have properly ruled against appellants on the substance of the discovery dispute, the sanction award was improper because the existence of "conflicting legal authority on an unsettled issue provided substantial justification for appellants' position, negating the basis for the sanction order."

Here, as Yelp points out, even the trial court expressly acknowledged—both in its tentative and at the hearing—that the law governing Montagna's motion to compel was an "evolving" and "unsettled" area of law. We certainly agree with that observation. In fact, the case law we have relied upon most heavily in this opinion, including *Glassdoor*, *ZL Technologies*, and *Williams*, was decided after the trial court issued its ruling. The evolution continues.

Moreover, the trial court characterized the question of whether sanctions were appropriate as "a close one," even as it also concluded Yelp lacked standing to even assert the First Amendment and privacy rights of its anonymous reviewer, Alex M. Had the trial court understood, as we conclude here, that Yelp did have standing, we doubt the trial court would have imposed the sanctions against it.

In light of the complex issues presented in this case, the evolving state of the applicable law, and the fact the trial court erred in concluding Yelp lacked standing to make the arguments it did, we conclude the trial court erred by imposing monetary sanctions against it. Hence, we reverse that order.

24

## DISPOSITION

The petition for writ of mandate is denied.  The order imposing monetary sanctions against Yelp is reversed.  The parties are to bear their own costs in this consolidated proceeding.


O'LEARY, P. J.

WE CONCUR:


IKOLA, J.


THOMPSON, J.